Kenneth J. Kelly
Kate B. Rhodes
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York 10177
212-351-4500
*Attorneys for Defendant The Brookdale
Hospital Medical Center*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------ X
ALLAN EKA on behalf of himself and other similarly  :
situated individuals,                                :          ECF CASE
                                                     :
                           Plaintiff,                :
                                                     :
            v.                                       :          2015 Civ. 4542 (KAM) (MDG)
                                                     :
BROOKDALE HOSPITAL MEDICAL CENTER,                   :
                                                     :
                                                     :
                           Defendant.                :
------------------------------------------------ X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT BROOKDALE'S MOTION TO DISMISS
## AND COMPEL GRIEVANCE & ARBITRATION

## TABLE OF CONTENTS

**PAGE**

I. PRELIMINARY STATEMENT ............................................................................................... 1

II. STATEMENT OF FACTS ...................................................................................................... 3

    A. Plaintiff's Employment Was Governed By A CBA.................................................... 3

    B. The CBA Provides For Wages Plaintiff Claims He Is Owed. .................................... 4

    C. The CBA Contains Mandatory Grievance And Arbitration
       Provisions That Includes Plaintiff's Claims Herein ..................................................... 5

III. ARGUMENT ......................................................................................................................... 7

    A. The Plaintiff's Claim for "Willful Failure to Pay Wages" Under
       New York Labor Law § 193 Should Be Dismissed Because It Is
       Completely Preempted By the Labor Management Relations Act
       § 301 and The Existence of a Collective Bargaining Agreement................................ 7

    B. This Court Should Stay This Proceeding Pending the Outcome of Arbitration,
       and Compel Grievance and Arbitration of Plaintiff's Claims ..................................... 11

IV. CONCLUSION..................................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**                                         **Page(s)**

*14 Penn Plaza LLC v. Pyett*,
   556 U.S. 247 (2009) .................................................................................... 3, 12, 13, 14

*Allis-Chalmers Corp. v. Lueck*,
   471 U.S. 202 (1985) ............................................................................................ 8, 9, 11

*Matter of Angello v. Labor Ready, Inc.*,
   7 N.Y.3d 579 (2006) ............................................................................................... 9-10

*Avco Corp. v. Aero Lodge No. 735*,
   390 U.S. 557 (1968) ..................................................................................................... 8

*Cavallaro v. UMass Mem'l Healthcare, Inc.*,
   678 F.3d 1 (1st Cir. 2012) ...................................................................................... 10, 14

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991) .......................................................................................... 2

*Curtis, Mallet-Prevost, Colt & Mosle, LLP v. Garza-Morales*,
   308 A.D.2d 261 (1st Dep't 2003) .............................................................................. 13

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ................................................................................................... 12

*Dean Witter Reynolds, Inc. v. Ross*,
   75 A.D.2d 373 (1st Dep't 1980) ................................................................................ 10

*Epifani v. Johnson*,
   65 A.D.3d 224 (2d Dep't 2009) ................................................................................. 10

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991) ..................................................................................................... 12

*Hudacs v. Frito-Lay, Inc.*,
   90 N.Y.2d 342 (1997) .................................................................................................. 9

*Indian Harbor Ins. Co. v. Global Transp. Sys., Inc.*,
   197 F. Supp. 2d 1 (S.D.N.Y. 2002) ........................................................................... 12

*Karic v. Major Auto Cos.*,
   992 F. Supp. 2d 196 (E.D.N.Y. 2014) ........................................................................ 9

*Koljenovic v. Marx*,
   999 F. Supp. 2d 396 (E.D.N.Y. 2014) ...................................................................... 10

*Levy v. Verizon Info. Servs., Inc.*,
    498 F. Supp. 2d 586 (E.D.N.Y. 2007) ...................................................................9, 10, 11

*Lingle v. Norge Div. of Magic Chef, Inc.*,
    486 U.S. 399 (1988) ..............................................................................................................8

*Maldonado v. La Nueva Rampa, Inc.*,
    No. 10 Civ. 8195, 2012 U.S. Dist. LEXIS 67058 (S.D.N.Y. May 14, 2012) .........................9

*Matter of Miller*,
    40 A.D.3d 861 (2nd Dep't 2007) .........................................................................................13

*Morrissey v. Verizon Comm'cns Inc.*,
    No. 10 Civ. 6115, 2011 U.S. Dist. LEXIS 73202 (S.D.N.Y. 2011) .....................................8

*N.Y. City Transit Auth. v. Transp. Workers Union of Am.*,
    99 N.Y.2d 1 (2002) ............................................................................................................13

*Rodriguez v. Four Seasons Hotels, Ltd.*,
    No. 09 Civ. 2864, 2009 WL 2001328 (S.D.N.Y. July 10, 2009) ......................................12

*Ross v. Am. Express Co.*,
    547 F.3d 137 (2d Cir. 2008) ..............................................................................................12

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000) ...................................................................................................2

*Salamea v. Macy's East, Inc.*,
    426 F. Supp. 2d 149 (S.D.N.Y. 2006) ................................................................................10

*Sullivan v. Am. Airlines, Inc.*,
    424 F.3d 267 (2d Cir. 2005) .................................................................................................8

*Vera v. Saks & Co.*,
    335 F.3d 109 (2d Cir. 2003) ...............................................................................................10

*Wynn v. AC Rochester*,
    273 F.3d 153 (2d Cir. 2001) .................................................................................................8

**Statutes**

Fed. R. Civ. P. 12 (b)(6) ..............................................................................................................1

9 U.S.C. §§ 1-16 ...................................................................................................................1, 12

29 U.S.C. § 151 *et. seq.* .....................................................................................................1, 7, 8

N.Y. Lab. Law § 193 .......................................................................................................*passim*

Defendant The Brookdale Hospital Medical Center ("Brookdale") respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12 (b)(6), the Labor Management Relations Act, 29 U.S.C. § 151 *et. seq.* (the "LMRA"), and the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), to dismiss the state law claim of Plaintiff Allen Eka because his New York state law claim is "completely preempted" by the LMRA and to compel grievance, mediation, and arbitration of all claims set forth in the Amended Complaint.

I. **PRELIMINARY STATEMENT**

In this putative class action, Plaintiff alleges, *inter alia*, that he and other purportedly similarly situated individuals were not paid the "proper hourly rate of pay" and overtime based on the alleged correct rate. The Amended Complaint does not specifically state the basis of this "proper hourly rate" (in contrast to the originally filed Complaint), and omits that the basis for any wage rate paid to Plaintiff, or any similar situated employee, is the collective bargaining agreement (the "CBA") between the League of Voluntary Hospitals and Homes of New York (a multi-employer bargaining unit of more than 50 hospitals and medical providers of which Brookdale is a member) and 1199 SEIU United Healthcare Workers East (the "Union").[1] While the Amended Complaint does include a reference to the collective bargaining relationship between Brookdale and the Union, it fails to specifically mention the existence of this CBA, despite its importance in determining the "proper hourly rate of pay" allegedly due to Plaintiff. (Rhodes Aff., Exh. A, ¶ 41.)

More specifically, the CBA sets forth all hourly wages to be paid to employees represented by the Union, which includes Plaintiff. The CBA also contains provisions concerning overtime and "shift differentials," which require Brookdale to pay certain employees working shifts that ended after 7:00 p.m. or began prior to 6:00 a.m. a rate 10% higher than the

---

[1] See Amended Complaint annexed to Rhodes Aff., Exh. A, ¶¶ 41-43.

base wage rate for those employees. (Rhodes Aff., Exh. B, pg 55-56.)[2] This provision of the CBA and the provisions of the CBA setting forth the base wage rate for employees are the sole sources of Plaintiff's claims, as these shift differentials and/or wages in excess of the state and federal minimum wages, are not required by law.[3]

Plaintiff alleges that his claim is for "withheld and deducted wages," supposedly arising under New York Labor Law § 193. (Rhodes Aff., Exh. A, ¶ 48.) Because Plaintiff's right to any wage rate in excess of the minimum wage, including any shift differential, is based on the CBA and not any state law, Plaintiff's claims are really a claim for breach of the CBA. Accordingly, Plaintiff's state law claim is "completely preempted" by the LMRA, and should be dismissed in its entirety.

The Court should stay these proceedings and compel grievance, mediation and arbitration pursuant to the CBA. As discussed more fully below, during the entirety of his employment with Brookdale, the terms and conditions of Plaintiff's employment were governed by the CBA. In addition to shift differentials, wage rates, and overtime provisions, the CBA contains comprehensive and mandatory grievance, mediation, and arbitration provisions. The grievance provision broadly states that "a dispute or complaint arising between the parties hereto under or out of this Agreement or the interpretation, application, performance, termination, or any alleged breach thereof . . . shall be processed and disposed" pursuant to the Grievance Procedures

---

[2] Relevant portions of the CBA are annexed as Exhibit B to the affidavit of Kate B. Rhodes, sworn to January 8, 2016, in support of this motion ("Rhodes Aff.").

[3] Given that Plaintiff refers to the CBA as the basis for the relationship between the parties, and relies on the CBA in the Amended Complaint to determine what he calls the "proper" rate of pay, *see* Rhodes Aff., Exh. A, ¶ 41-43, reference to the CBA on motion is appropriate here. *See Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. . .and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.") (internal citations omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991) ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim -- and that they apparently most wanted to avoid -- may not serve as a means of forestalling the district court's decision on the motion [to dismiss].").

(Article XXXI) and Arbitration provision (Article XXXII) in the CBA. (Rhodes Aff., Exh. B, at 78-79.)

Consistent with the United States Supreme Court's ruling in *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), the CBA contains a "clear and unmistakable" agreement to grieve and arbitrate all of Plaintiff's claims, whether on a class or individual basis. Indeed, the alleged failure to pay the otherwise undefined "proper hourly rate of pay," and overtime based on that wage rate,[4] is a right that exists only by the CBA, not under the New York Labor Law or the Fair Labor Standards Act, and therefore arises "under or out of" of the CBA and is subject to the CBA's grievance and arbitration procedures. Since all of the claims brought by Plaintiff in his Amended Complaint are subject to the mandatory grievance and arbitration provisions, whether or not the Court dismisses the state law claims in the Amended Complaint, it should stay all proceedings, and compel Plaintiff to grieve and arbitrate both his claims pursuant to the specific procedures set forth in the CBA, as the Court is not the appropriate forum for this contractual dispute.

## II. STATEMENT OF FACTS

### A. Plaintiff's Employment Was Governed By A CBA

At all times relevant to the Amended Complaint, Plaintiff was employed by Brookdale as a part-time Psychiatric Technician. Plaintiff continues to be employed as a part-time Psychiatric Technician at Brookdale. (Rhodes Aff. Exh. A ¶ 8.)

The Union is the collective bargaining representative for a large number of Brookdale's employees, including Plaintiff, as accurately alleged in the Amended Complaint (*Id.* ¶ 41.) The Amended Complaint implies, but fails to specifically state, that the terms and conditions of

---
[4] The Amended Complaint does not allege that Plaintiff was not paid overtime, but rather that overtime was not paid at the correct rate. (Rhodes Aff. Exh. A ¶ 37-38.)

3

Plaintiff's employment were, and still are, governed by the CBA entered into between Brookdale and the Union, effective on or about June 1, 2009. (*Id.* ¶ 24.) As for the "proper" wage rate Plaintiff is claiming and/or any rate that may have been "certified" to Plaintiff by Brookdale, the Amended Complaint is intentionally vague as to the basis or source of the "proper" wage rate. (*Id.* ¶¶ 31, 3.) What the Amended Complaint omits is that the basis for any wage rate paid to Plaintiff, any other Psychiatric Technician, or any employee represented by the Union at Brookdale, is governed solely by the CBA.[5] Therefore, any "proper" rate of pay relies on provisions in the CBA, which include provisions governing base wage rates, overtime, and any premium or enhanced wage rates for specific shifts or types of work.

Importantly, Brookdale employees, including Plaintiff, often work outside of typical business hours, and provisions in the CBA (discussed in more detail below) may entitle them to an enhanced wage rate. For example, Psychiatric Technicians, including Plaintiff, are assigned to work at least one of three shifts on days in which they work, since it is critical that a technician be present in the psychiatric unit at all times. The first shift is from 8:00 a.m. until approximately 4:15 p.m. (the "First Shift"), the second shift is from 4:00 p.m. until approximately 12:15 a.m. (the "Second Shift"), and the third shift is from 12:00 a.m. until approximately 8:15 a.m. (the "Third Shift"). (Rhodes Aff. ¶ 2.) Plaintiff has worked, and continues to work, primarily the Second Shift, although he occasionally works shifts during the First Shift and Third Shift. (Rhodes Aff. ¶ 3.) Plaintiff primarily and regularly works the Second Shift, and therefore any wage "certification" allegedly provided to him by Brookdale, (Rhodes Aff. Exh. A ¶ 31), would likely list the Second Shift wage rate, because he may be entitled to an enhanced wage rate for certain time worked pursuant to the CBA.

**B.   The CBA Provides For The Wages Plaintiff Claims He Is Owed**

---

[5] These wage rates are in excess of any state or federally mandated minimum wages.

The CBA between the parties states, in Article XIV, Paragraph 1(a-b), that:

> Employees working on shifts whose straight time hours end after seven (7:00) p.m. or begin prior to six (6:00) a.m. shall receive the following differentials:
>
> (a) Licensed Practical Nurses . . .
>
> (b) All Other Employees – a shift differential of ten percent (10%) of salary, including specialty differential.

(Rhodes Aff., Exh. B page 55.)

The "proper hourly rate of pay" referred to in the Amended Complaint is based on this provision of the CBA, and the CBA's provisions regarding base wage rates. (*See* Rhodes Aff. Exh. A ¶ 33.) This shift differential, or any other wage rate in excess of the state minimum wage, is not required by the New York Labor Law § 193, or any other local, state, or federal law. Only the CBA requires Brookdale to pay shift differentials or the base wage rates in the CBA to the bargaining unit employees.

### C. The CBA Contains Mandatory Grievance And Arbitration Provisions That Includes Plaintiff's Claims Herein

The CBA governing the terms and conditions of Plaintiff's employment contains comprehensive grievance and arbitration provisions. It provides, among other things, that employees, or their Union delegate, must first attempt to resolve the dispute with their immediate supervisor within a reasonable time. (CBA, Art. XXI, Para. 1, Rhodes Aff., Exh. B, at 78-79.) Next, Brookdale will respond to the grievance within five working days ("Step 1"). *Id.* If that does not resolve the issue, the employee may, within five working days after receiving Brookdale's response, submit the grievance to "Step 2" in writing to the employee's department head. *Id.* Brookdale will then respond within five working days. *Id.* If the issue remains unresolved, the employee can proceed to "Step 3," where the grievance is presented to Brookdale's Personnel Director or Administrator. *Id.* During Step 3, a grievance meeting is

5

scheduled within 15 or 25 working days, depending on the basis of the grievance. *Id.* After this meeting, Brookdale will use its best efforts to render a decision within five days, and in no case more than ten days, after the Step 3 grievance meeting. *Id.* Note that either the employee or the Union can take advantage of the grievance and arbitration procedures under the CBA. There is no provision preventing the employee from pursuing his or her grievance(s) without the assistance or approval from the Union.

Following the three step grievance process, upon request of either party, a grievance may be submitted to mediation, utilizing the Federal Mediation and Conciliation Service, or directly to arbitration, pursuant to the procedures of the American Arbitration Association. (Rhodes Aff., Exh. B, at 79-80.)

The CBA also explicitly contemplates "class" grievances:

> A grievance which affects a substantial number or class of Employees, and which the Employer representative designated in Steps 1 and 2 lacks the authority to settle, may initially be presented at Step 3 by the Union representative.

(Rhodes Aff., Exh. B, at 79).

These grievance and arbitration provisions encompass claims regarding wages not paid under the CBA. The CBA defines a grievance as "a dispute or complaint arising between the parties hereto under or out of this Agreement or the *interpretation, application, performance,* termination, or any alleged breach thereof. . ." (Rhodes Aff., Exh. B, at 78) (emphasis added). Note that the grievance and arbitration procedures not only include "interpretation" of the CBA, but also the "performance" of the CBA.

In this action, Plaintiff has brought claims against Brookdale purportedly for "wage theft," "improperly and illegally with[olding] and deduct[ing] wages," and failing to pay overtime at the "proper" rate, specifically, not paying wages at the "proper" rates according to

6

the base wage rate, shift differential, and overtime provisions of the CBA. (Rhodes Aff. Exh. A ¶ 48.) Plaintiff never grieved or arbitrated his claims; indeed, he claims in the Amended Complaint that he and others brought the issue to the Union which declined to take any action under the CBA or otherwise. (Rhodes Aff. Exh. A ¶¶ 42-43.) Plaintiff, however, is permitted by the CBA to pursue his grievance(s) on his own behalf, and is not required to go through the Union. (Rhodes Aff. Exh. B at 78-79.) The Union's alleged lack of action does not preclude Plaintiff from pursing this claim under the CBA on his own behalf. Brookdale does not have any record of Plaintiff, or the Union on his behalf, attempting to resolve any dispute related to these allegations with his supervisor, of a written grievance concerning these allegations, or of these allegations being submitted to arbitration. (Rhodes Aff. ¶¶ 5-6.)

### III. ARGUMENT

    A.    **The Plaintiff's Claim for "Willful Failure to Pay Wages" Under New York Labor Law § 193 Should Be Dismissed Because It Is Completely Preempted By the Labor Management Relations Act § 301 and The Existence of a Collective Bargaining Agreement**

Plaintiff's claim that Brookdale willfully failed to pay wages under New York Labor Law § 193 is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 151 *et. seq.*, and accordingly should be dismissed.

Section 301 of the LMRA "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 (1988). Section 301 preemption occurs wherever resolution of a claim under state statutes is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract[.]" *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).

7

Moreover, the Supreme Court has long held that Section 301 of the LMRA has "the requisite extraordinary preemptive force to support complete preemption." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005) (citing *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 558-62 (1968)). "State law claims are preempted by Section 301 of the LMRA where their resolution requires interpretation of a collective bargaining agreement." *Morrissey v. Verizon Comm'cns Inc.*, No. 10 Civ. 6115, 2011 U.S. Dist. LEXIS 73202, at *7-8 (S.D.N.Y. 2011); *see also Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001) ("Where the resolution of a state-law claim depends on an *interpretation* of the collective-bargaining agreement, the claim is pre-empted") (citation omitted) (emphasis in original).

More specifically, Section 301(a) of the LMRA, 29 U.S.C. § 185(a), provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

When a state law claim for wages is asserted, courts first consider whether the claimed entitlement arises from state law, independent of the CBA, or, in contrast, by virtue of a CBA provision alone. *Levy v. Verizon Info. Servs., Inc.*, 498 F. Supp. 2d 586, 596 (E.D.N.Y. 2007). If the latter, the claim is preempted. *Id.* If the former, the court next considers whether the state law claim requires an interpretation of a CBA provision. If contract interpretation is required, the claim is also preempted. *See, e.g., Allis-Chalmers*, 471 U.S. at 220. This principle was concisely stated by Judge Gershon in *Levy v. Verizon Info. Servs., Inc.*, 498 F. Supp. 2d 586, 596 (E.D.N.Y. 2007) (citation omitted), as follows:

> With these principles in mind, a court must engage in a two-part analysis in order to determine whether a state law claim is preempted by § 301. First, a court must analyze the "legal

8

> character" of the claim and whether it is truly independent of rights under the collective bargaining agreement. . . . The starting point in making such a determination is consideration of the elements of plaintiffs' stated claims. . . . *If the right exists solely as a result of the CBA*, and not by virtue of state law, then the claim is preempted, and the analysis ends there.

(Citations omitted, emphasis added).

Here, Plaintiff asserts a cause of action alleging that his, and other similarly situated employees', wages were unlawfully "withheld and deducted." (Rhodes Aff. Exh. A ¶¶ 25-26, 39). What Plaintiff attempts to obfuscate in his Amended Complaint is that the basis for the "proper" wage rate he alleges he is entitled to arises solely from the CBA, which is referenced in the Amended Complaint, not New York law.[6] Substantive provisions of the New York Labor Law do not require payments of any shift differentials, or any wage rate in excess of the minimum wage laws. Accordingly, Plaintiff's true claim is that he was not paid as required by the terms of the CBA, not in violation of any state law mandates.

Due to the fact that Plaintiff's supposed New York Labor Law claim is a breach of contract claim and does not arise from any provision of the New York Labor Law, his claim is pre-empted by Section 301 of the LMRA and should be dismissed. Courts have dismissed state law claims as preempted under similar circumstances. *See Cavallaro v. UMass Mem'l*

---

[6] Plaintiff's claims have no basis in Section 193 of the New York Labor Law. Section 193 prohibits employers from making unauthorized deductions from an employee's wages. There is nothing in the statute that speaks to an employer's obligation to pay an employee a rate other than those required by law, of which shift differentials and any rate in excess of the state mandated minimum wages are not. Courts consistently find that the purpose of § 193 is to "prohibit employers from making unauthorized deductions from wages and therefore to place the risk of loss for such things as damaged, spoiled merchandise, or lost profits on the employer." *Karic v. Major Auto Cos.*, 992 F. Supp. 2d 196, 202 (E.D.N.Y. 2014) (citing *Maldonado v. La Nueva Rampa, Inc.*, No. 10 Civ. 8195, 2012 U.S. Dist. LEXIS 67058, at *8 (S.D.N.Y. May 14, 2012)); *see also Hudacs v. Frito-Lay, Inc.*, 90 N.Y.2d 342, 349 (1997) ("Section 193 was intended to place the risk of loss for such things as damaged or spoiled merchandise on the employer rather than the employee").

The types of claims typically brought under Section 193 allege that an employer unlawfully deducted monies from employees' wages such as cash dispensing machine fees, *Matter of Angello v. Labor Ready, Inc.*, 7 N.Y.3d 579 (2006), long distance phone calls and losses due to errors, *Dean Witter Reynolds, Inc. v. Ross*, 75 A.D.2d 373 (1st Dep't 1980), and repayment of missing funds, *Koljenovic v. Marx*, 999 F. Supp. 2d 396 (E.D.N.Y. 2014); *Epifani v. Johnson*, 65 A.D.3d 224 (2d Dep't 2009). It is not an all-purpose mechanism for enforcing contract rights having nothing to do with deductions.

*Healthcare, Inc.*, 678 F.3d 1, 5 (1st Cir. 2012) (dismissing state law claims alleging that employees were not properly paid for work performed during their meal break, for work performed before and after shifts, and for time spent attending training sessions because the case "depends importantly upon what the CBA provides. . ."); *Vera v. Saks & Co.*, 335 F.3d 109, 115-16 (2d Cir. 2003) (dismissing a claim made under Section 193 of the New York Labor Law because the claim "will require substantial interpretation of the CBA" and therefore was preempted by Section 301 of the LMRA); *Salamea v. Macy's East, Inc.*, 426 F. Supp. 2d 149, 155 (S.D.N.Y. 2006) (dismissing a claim for unpaid vacation under the New York Labor Law because "resolution of these disputes will require interpretation of the CBA" and is therefore preempted by the LMRA) *Levy*, 498 F. Supp. 2d at 597 (dismissing claims made for the recoupment of commission pay under the New York Labor Law because they "substantially depend on an interpretation of the terms of the CBAs" and were therefore preempted by the LMRA) (internal quotations omitted).

Even if one could disregard the language of the statute and construe Plaintiff's claim as arising under Section 193, his claim is still preempted since resolution of his dispute requires interpretation of the CBA. To quote Judge Gershon again on *Levy*:

> Second, even if the right exists independently of the CBA, the court must still consider whether it is nevertheless "substantially dependent on analysis of a collective bargaining agreement." . . . see also *Allis-Chalmers*, 471 U.S. at 213, 105 S.Ct. 1904 (explaining that when "state . . . law purports to define the meaning of the contract relationship, that law is preempted"). If such dependence exists, the claim is preempted by § 301; if not, the claim can proceed under state law . . . In making this determination, courts must consider whether the claim can be resolved by "look[ing] to" versus interpreting the CBA . . . "If the latter, the claim is preempted; if the former, it is not."

(498 F. Supp. 2d at 596) (citations omitted)

Plaintiff's claims require interpretation of several provisions of the CBA in order to determine the "proper" wage rate and overtime rate he claims to be owed. While the Amended Complaint does not make the basis for the "proper" wage rate clear, when considered in conjunction with the original Complaint, Plaintiff's claims are based on the fact that occasionally he will work two eight hour shifts "back to back." (*See* Dkt. No. 1, Doc. 1-2, ¶¶ 26-58.) For example, he has worked the First Shift from 8:00 a.m. to 4:15 p.m. followed immediately by a Second Shift, ending at 12:15 a.m. Brookdale paid him the regulate rate for the First Shift and the enhanced rate for the Second Shift. His claim is that, under his interpretation of the CBA, <u>both</u> shifts should be considered a single "mega-shift," and the enhanced rate should be paid for <u>both</u> shifts, since this "mega-shift" ends after 7:00 p.m. (Plaintiff has asserted a similar claim for Third Shift – First Shift combinations). Plaintiff's Fair Labor Standards Act overtime claim is based on the same issue, namely are "back to back" shifts considered a single "shift," and consequently, what is the "proper" rate to be multiplied by 150% for overtime. In contrast, Brookdale contends that the CBA provides that employees should be paid the wage rate applicable to each shift. Resolving Plaintiff's claim as to the proper compensation for "back to back" shifts will necessary require interpretation of the term "shifts whose straight time hours end after seven (7:00) p.m. or begin prior to six (6:00) a.m. . ." Accordingly, because Plaintiff's state law claim under the New York Labor Law will require interpretation of the CBA, that claim is preempted by the LMRA.

    B.    **This Court Should Stay This Proceeding Pending the Outcome of Arbitration, and Compel Grievance and Arbitration of Plaintiff's Claims**

Irrespective of the preemption issue, the CBA requires Plaintiff to grieve and then arbitrate his state and federal law claims. Thus, pursuant to the Federal Arbitration Act ("FAA")

and the Supreme Court's decision in *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), this action should be stayed pending the outcome of arbitration.

Under the FAA, a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *Rodriguez v. Four Seasons Hotels, Ltd.*, No. 09 Civ. 2864, 2009 WL 2001328, at *2 (S.D.N.Y. July 10, 2009). The federal policy favoring arbitration is well-established. The FAA represents a strong federal policy favoring arbitration as an alternative means of dispute resolution. *See Ross v. Am. Express Co.*, 547 F.3d 137, 143 (2d Cir. 2008); *see also Indian Harbor Ins. Co. v. Global Transp. Sys., Inc.*, 197 F. Supp. 2d 1, 3 (S.D.N.Y. 2002). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which the arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citations omitted) (emphasis in original).

The Supreme Court's decision in *Pyett* further emphasizes this point and requires that Plaintiff arbitrate his claims against Brookdale. In *Pyett*, the United States Supreme Court recognized the broad authority of a labor union to agree to arbitration on behalf of its bargaining unit members: "As in any contractual negotiation, a union may agree to the inclusion of an arbitration provision in a collective-bargaining agreement in return for other concessions from the employer. Courts generally may not interfere in this bargained-for exchange." *Pyett*, 556 U.S. at 257. The Court added, "[n]othing in the law suggests a distinction between . . . arbitration agreements signed by an individual employee and those agreed to by a union representative." *Id.* at 258.

12

New York has also adopted a strong policy favoring arbitration as a means of dispute resolution. The New York Court of Appeals has observed: "Our courts have long since abandoned their distrust and hostility toward arbitration as an alternative means for the resolution of legal disputes, in favor of a policy supporting arbitration and discouraging judicial interference with either the process or its outcome." *N.Y. City Transit Auth. v. Transp. Workers Union of Am.*, 99 N.Y.2d 1, 6 (2002) (internal citations omitted); *see also Matter of Miller*, 40 A.D.3d 861, 861-62 (2nd Dep't 2007) ("Arbitration is favored in New York State as a means of resolving disputes, and courts interfere as little as possible with agreements to arbitrate."); *Curtis, Mallet-Prevost, Colt & Mosle, LLP v. Garza-Morales*, 308 A.D.2d 261, 269 (1st Dep't 2003) ("The Court of Appeals has recently held New York's policy in favor of arbitration to be so strong that it overrides all but a very few other public policies of the State itself.)

As discussed above, the CBA expressly provides that any "dispute or complaint arising between the parties hereto under or out of this Agreement or the interpretation, application, performance, termination, or any alleged breach thereof" must be submitted to the grievance and arbitration procedures in the CBA. (Rhodes Aff., Exh. B, at 78-79). An allegation that Brookdale has not properly paid the Plaintiff the amount proscribed under the CBA, whether as a base wage rate, shift differential, or overtime rate, inherently arises out of the CBA, and must be submitted to grievance and arbitration. This type of interpretation issue is uniquely suited for an arbitrator familiar with healthcare workers' custom and practice in New York City, -- where double shifting and three-day work weeks are prevalent the hospital industry, particularly since the interpretation of the shift differential clause may affect more than 50 separate employers governed by the CBA. Interpretation of a number of interlocking provisions of the CBA is a "complicated task better suited for an arbitrator's expertise." *See Cavallaro*, 678 F.3d at 8

("Determining whether there are wages owed thus will require construing and applying the various 'peculiarities of industry-specific wage and benefit structures' embodied in the [defendant hospital's] CBA – a complicated task better suited for an arbitrator's expertise").

The CBA itself, the strong federal and New York state preference for enforcement of collectively bargained arbitration, and the Supreme Court's decision in *Pyett*, require that Plaintiff's claims be grieved and arbitrated and this action be stayed.

## IV. CONCLUSION

For all of the foregoing reasons, Brookdale respectfully requests that this Court issue an Order: (1) dismissing the state law claims in their entirety, with prejudice; and (2) staying proceedings and compelling Plaintiff to grieve, mediate, and then arbitrate his claims; and (3) awarding such other relief as it deems just and proper.

Dated: New York, New York
       January 8, 2016

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By:  /s/ Kenneth J. Kelly
      Kenneth J. Kelly
      Kate B. Rhodes
250 Park Avenue
New York, New York 10177-1211
Tel:  (212) 351-4500
Fax:  (212) 878-8600
Email: kkelly@ebglaw.com
       krhodes@ebglaw.com
*Attorneys for Defendant The Brookdale Hospital Medical Center*