```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```

- - - - - - - - - - - - - - - - - - X

ALLAN EKA, on behalf of himself and
other similarly situated individuals,

                Plaintiff,      REPORT AND
                                    RECOMMENDATION
     - against -
                                    CV 2015-04542 (KAM)(MDG)

BROOKDALE HOSPITAL MEDICAL CENTER,

                Defendant.

- - - - - - - - - - - - - - - - - - X

GO, United States Magistrate Judge:

     Plaintiff Allan Eka brings this action against defendant Brookdale Hospital Medical Center ("Brookdale") seeking unpaid minimum and overtime wages and liquidated damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and pendent state claims under the New York Labor Law ("NYLL"), N.Y. Lab. Law, Art. 19 §§ 650 et seq. See DE 8 ("Am. Compl."). The Honorable Kiyo Matsumoto referred to me for report and recommendation defendant's motion to dismiss plaintiff's state claims and to compel arbitration.

BACKGROUND

<u>Procedural History</u>

     Plaintiff commenced this action in the Supreme Court of the State of New York, County of Kings, "to recover unpaid compensation, liquidated damages, reasonable attorneys' fees and costs relating to Defendant's breach of contract and willful

violations of the New York State Labor Law."  See Verified Complaint ("Compl.") at ¶ 1 attached as Exh. A to Removal Petition, DE 1.  Bringing the action as a putative class action, plaintiff alleged in his verified state court complaint that defendant failed to pay wages at the proper hourly rate under a collective bargaining agreement ("CBA") that governed the terms of employment of plaintiff and other similarly situated employees, in violation of § 193 of the New York Labor Law and entitling him to recover unpaid wages, liquidated damages and attorneys' fees under § 198(1-a).  Id. at ¶¶ 24-31, 39-42.

After removing the action to this Court,[1] defendant sought a pre-motion conference before the Honorable Kiyo Matsumoto to discuss a contemplated motion to dismiss on the ground that plaintiff's claim under the NYLL is preempted by Section 301 of the LMRA, 29 U.S.C. §§ 151, et seq., and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, et seq.  See DE 5.  Defendant also sought to stay the claims raised until completion of the grievance and arbitration procedures of the CBA.  Id. at 3.

Following the pre-motion conference, plaintiff filed an

---

[1] Plaintiff has not challenged the propriety of removal by defendant on the basis that the NYLL claim is governed by a CBA, and preempted by the Labor Management Relations Act ("LMRA").  As a general rule, a defendant may not remove an action on the basis of federal question jurisdiction if the federal claim is based on a defense arising under federal law, including the defense of preemption.  See Caterpillar, Inc. v. Williams, 482 U.S. 386, 398 (1987).  However, "the Supreme Court has [] identified three statutes that completely preempt state law and allow for the removal of preempted state law causes of action," one of which is § 301 of the Labor-Management Relations Act.  Holmes v. Experian Info. Sols., Inc., 2011 WL 4542900, at *3 (S.D.N.Y. Sept. 30, 2011), aff'd, 507 F. App'x 33 (2d Cir. 2013).

-2-

amended complaint with two claims -- essentially asserting the same claim under the NYLL and a new claim under the FLSA based on the same allegations underlying the NYLL claim. See DE 8. After the parties engaged in unsuccessful efforts to resolve this action, defendant filed the instant motion to dismiss. DE 15.

Pertinent Facts

The following facts are based primarily on allegations in the Amended Complaint, except where indicated.[2] Plaintiff's allegations in his pleadings are assumed to be true for purposes of this motion.

Plaintiff was employed as a psychiatric associate[3] by Brookdale, a non-profit hospital located in Brooklyn, New York. Am. Compl. at ¶¶ 4, 8. The terms and conditions of employment of plaintiff and other similarly situated employees are governed by the terms of a CBA, and one of the terms and conditions of

---

[2] This Court is constrained to note that plaintiff removed from the Amended Complaint a number of important factual allegations appearing in his original verified complaint, even though the Amended Complaint contains what appears to be the same NYLL claim as in the first complaint. Thus, the Amended Complaint is barren of facts, as further discussed below. Since plaintiff has not disavowed his sworn statements in his original verified complaint, the factual allegations contained therein are considered, even though an amended complaint is the operative pleading. See Wright v. Green Tree Servicing LLC, 2016 WL 4098404, at *1 n.1 (S.D.N.Y. July 25, 2016) (relying on document attached to superceded complaint in deciding motion to dismiss); Augustus v. Brookdale Hosp. Ctr., 2015 WL 5655709, at *1 n.2 (E.D.N.Y. Sept. 24, 2015) (considering on 12(b)(6) motion facts contained in original complaint that are not repeated in amended complaint); Poindexter v. EMI Record Grp., 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012).

[3] In its motion, defendant refers to plaintiff's position as a "psychiatric technician."

-3-

employment was that work performed between 4:00 p.m. and 12:00 a.m. (the "Second Shift") commanded a higher hourly rate. Compl. at ¶¶ 24, 37. Specifically, when defendant and other similarly situated employees were assigned to work the "Second Shift," they were entitled to compensation at a hourly rate of pay that was 10% higher than the hourly rate for work between 8:00 a.m. and 4:00 p.m. (the "First Shift").[4] Compl. at ¶¶ 26, 28. Plaintiff further alleged in his verified complaint that when psychiatric associates were assigned to work on consecutive First Shifts and Second Shifts, defendant improperly paid them for First Shift work at the lower hourly rate, rather than paying compensation for both shifts at the higher Second Shift rate. Compl. at ¶¶ 27-28. Plaintiff claims that because "Defendant improperly and illegally withheld and deducted wages by engaging in the practice of failing to compensate Plaintiff and similarly situated co-workers at the appropriate hourly rate of pay," in violation of § 193 of the New York Labor Law, and, because defendant's conduct was willful, plaintiff is entitled to recover unpaid wages, liquidated damages and attorneys' fees under § 198(1-a). Compl. at ¶¶ 39-42; Am. Compl. at ¶¶ 48-51.

---

[4] Plaintiff alleges in paragraph 26 of his original complaint that the hourly rate for the First Shift is 10% lower than the hourly rate for Second Shift work. Compl. at ¶ 26. However, he also refers to the defendant's certification to the New York State Department of Labor that employees assigned to work the Second Shift are paid an hourly rate of pay that is 10% higher than the rate for First Shift work. Id. at ¶ 28. These allegations posit two different formulas that do not yield the same number. In light of the terms of the CBA as to wages discussed below, this Court believes that the differential in hourly rates is correctly reflected in paragraph 28.

In his Amended Complaint, plaintiff merely alleges that Brookdale failed to compensate him at his "proper" hourly rate, and did not pay him time and one half his hourly rate for hours worked in excess of forty per week, but does not indicate what rate of pay or when he did not receive the proper payments. Am. Compl. at ¶¶ 8, 32-39, 48-51, 55-56. Plaintiff alleges only that despite "certifying" plaintiff's rate of pay and overtime pay in accordance with section 195.1 of the NYLL, defendant "engaged in a consistent and regular practice of paying plaintiff" and similarly situated employees an overtime rate of less than that of 150% their regular hourly rate of pay, in violation of § 193 of the New York Labor Law. See id. at ¶¶ 32-38, 49.

Plaintiff and other employees "have issued complaints to" the 1199SEIU United Healthcare Workers East (the "Union"), "the collective bargaining representative for plaintiff." Compl. at ¶ 25; Am. Compl. at ¶ 41. However, because the Union had advised that it "does not intend to get involved in this issue," plaintiff claims that "it is obvious that pursing the Union to redress Defendant's practices of under-compensating employees who work double shifts is futile." Compl. at ¶ 33; Am. Compl. at ¶ 43.

Defendant's Motion

Defendant moves to dismiss plaintiff's state law wage claims pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that because the plaintiff's hourly wages, and, thus his overtime rate, are determined pursuant to a CBA, plaintiff's NYLL claim is

pre-empted by the LMRA, which governs the collective bargaining relationship with the Union.  See DE 17 (Def.'s Mem.) at 1-2, 9-10. Defendant includes with its motion an excerpt from a collective bargaining agreement between the League of Voluntary Hospitals and Homes of New York and the Union which is attached as an exhibit to the affidavit of Kate Rhodes, counsel for the defendant ("Rhodes Aff.").  See DE 16 and 16-1 ("CBA Excerpt") at 16-29.  Ms. Rhodes states that Brookdale is a member of the League of Voluntary Hospitals and Homes of New York, a multi-employer bargaining unit. DE 16 ("Rhodes Aff.") at ¶ 7.

In opposing the motion, plaintiff submits a document titled "Notice and Acknowledgment of Pay Rate and Payday" ("2014 Pay Notice") for plaintiff dated February 6, 2014, which sets forth plaintiff's pay rate for a certain shift (Shift 2) as $21.24, and his overtime pay rate as $31.85.  See DE 18-2.  Plaintiff argues that his state law claims are neither raised under the LMRA nor pre-empted by the LMRA because resolution of his claims does not necessitate "reference to, much less interpretation of" the CBA. See DE 18 at 4, 5-6.

DISCUSSION

I.   Legal Standards

Rule 12(b)(6) requires dismissal if a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atlantic Corp. v.

-6-

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citations omitted). Plaintiff must provide more than a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. A court must presume the truth of all factual allegations in the complaint for purposes of Rule 12(b)(6), but the court is not bound to accept the truth of legal conclusions couched as factual allegations. Papasan v. Allain, 478 U.S. 265, 286 (1986). In analyzing well-pled facts, a court will draw all reasonable inferences in favor of plaintiff. See Gorman v. Consol. Edison Corp., 488 F.3d 586, 591-92 (2d Cir. 2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief" will it grant dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993).

Before addressing the merits of plaintiffs' claims, the Court must first determine whether it may consider the portions of the CBA attached as an exhibit to the affidavit of Kate Rhodes. On a motion to dismiss under Rule 12(b)(6), the court should ordinarily consider only the complaint itself, documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, and matters of which judicial notice may be taken. See Chambers v. Time Warner,

Inc., 282 F.3d 147, 153 (2d Cir. 2002); Int'l Audiotext Network, Inc. v. Am. Tel. & Tel Co., 62 F.3d 69, 72 (2d Cir. 1995). A court may consider "materials outside the record ..." if: (1) the document is "'integral' to the complaint"; (2) "no dispute exists regarding the authenticity or accuracy of the document"; and (3) "there exist no material disputed issues of fact regarding the relevance of the document." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006).

According to Ms. Rhodes, the CBA excerpts are from the CBA between the Union and the League of Voluntary Hospitals and Homes of New York, of which Brookdale is a member, that was operative from June 1, 2009 until April 30, 2015. DE 16-1 at 16-29. In his Amended Complaint, plaintiff omits mention of the CBA and does not identify the CBA as the source of the defendant's obligation to pay plaintiff at the "proper" hourly rate, even though he alleged in his verified complaint that the terms and conditions of his employment were governed by a CBA and that the Union was the "collective bargaining representative" for plaintiff. Compl. at ¶ 24-25.

However, notwithstanding his sparse Amended Complaint, plaintiff acknowledges that he was a union member and clearly knew about or had in his possession a copy of the CBA. He refers to the Union as his "collective bargaining representative" and alleges that it would have been futile for him to have redress his wage complaints through the Union. See Am. Compl. at ¶¶ 41-43. Although objecting to defendant's "injecting" the CBA into this

-8-

action, see DE 18 at 4, plaintiff does not dispute the accuracy of the CBA attached to the Rhodes Affidavit.

Accordingly, this Court finds that the CBA was incorporated by reference into the amended complaint, as it is integral to determining whether plaintiff was paid at the "proper rate," and may properly be considered on a Rule 12(b)(6) motion to dismiss. Chambers, 282 F.3d at 153; see e.g., McLean v. Garage Mgmt. Corp., 2011 WL 1143003, at *1 n. 1 (S.D.N.Y. Mar. 29, 2011) (considering CBA on defendant's motion to dismiss, even though the document was not "referenced in or appended to the Complaint," because the CBA was "integral to the complaint" and where plaintiffs did not contest the existence of the CBA); Levy v. Verizon Info. Servs. Inc., 498 F. Supp. 2d 586, 593 (E.D.N.Y. 2007) ("Plaintiffs' careful avoidance of referencing [the CBAs, which] are integral to the complaint[,] does not deprive the court of its power to review [the documents] on a motion to dismiss").  In fact, by omitting references to the CBA and other wage terms in the CBA, it is questionable whether the conclusory allegations in the Amended Complaint suffice to state a claim for unpaid overtime, as further discussed below. Cf. DeJesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 89-90 (2d Cir. 2013).  Simply, "Plaintiffs' failure to include matters of which as [a pleader he] had notice and which were integral to [his] claim -- and that [he] apparently most wanted to avoid -- may not serve as a means of forestalling the district court's decision on the motion." Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 44 (2d Cir. 1991).  In addition, given

plaintiff's allegation regarding the futility of pursuing redress through the Union, the Court finds that the provisions in the CBA regarding grievance, mediation and arbitration of disputes are also integral to determination of plaintiff's claims.

Since plaintiff relies on his 2014 Pay Notice and Acknowledgement of Pay Rate in arguing against consideration of the CBA, this Court will consider the notice. See DE 18-2 at 2.

II.  Motion to Dismiss: Preemption of NYLL Claim under the LMRA

The FLSA and NYLL, where applicable, require that employers pay overtime for hours worked over forty per week at a rate "not less than one and one-half times the regular rate" of pay. See 29 U.S.C. § 207(a)(1); see N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (2016). When an employer calculates overtime pay under both the FLSA and the NYLL, "all remuneration for employment," subject to certain exceptions, must generally be included in an employee's "regular rate" of pay. 29 U.S.C. § 207(e); see Ramirez v. Riverbay Corp., 35 F. Supp. 3d 513, 530 (S.D.N.Y. 2014). An employee's "regular rate" of pay includes shift differentials. See Conzo v. City of New York, 667 F. Supp. 2d 279, 283 (S.D.N.Y. 2009). The FLSA and NYLL confers on employees rights to overtime pay which are independent of contractual rights arising out of a CBA. See Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 745 (1981); Kaye v. Orange Reg'l Med. Ctr., 975 F. Supp. 2d 412, 422 (S.D.N.Y. 2013).

In contrast, § 301 of the LMRA "governs claims founded directly on rights created by [CBAs], and also claims substantially

-10-

dependent on analysis of a [CBA]. . . . ." Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987) (internal quotation marks omitted). Section 301 requires that an employee exhaust the governing CBA's grievance procedures before bringing a claim for breach of a CBA under the LMRA. See Dougherty v. American Tel. & Tel. Co., 902 F.2d 201, 203-04 (2d Cir. 1990). Section 301 preempts state law claims[5] that involve interpretation of an underlying CBA. See Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 (1988) ("[A]n application of state law is preempted by § 301 of the [LMRA] only if such application requires the interpretation of a [CBA]"); see also Vera v. Saks & Co., 335 F.3d 109, 114 (2d Cir. 2003) ("questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort") (citing Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985)).

The preemptive effect of § 301 assures that arbitration agreements are enforced and promotes the "uniform interpretation of

---

[5] Section 301 also precludes claims brought under the FLSA which involve interpretation of a CBA. Cantave v. Uptown Commc'ns & Elec. Inc., 2015 WL 4716539, at *4-*7 (E.D.N.Y. Aug. 7, 2015) (finding plaintiff's FLSA claim preempted by the LMRA); Johnson v. D.M. Rothman Co., Inc., 861 F. Supp. 2d 326, 331 (S.D.N.Y. 2012) (citing Vadino v. A. Valey Eng'rs, 903 F.2d 253, 266 (3d Cir. 1990)); Hoops v. Keyspan Energy, 822 F. Supp. 2d 301, 306 (E.D.N.Y. 2011). However, defendant has not moved to dismiss plaintiff's FLSA claim and, instead, seeks to stay this action pending grievance and arbitration proceedings.

[CBAs]" under federal law. Lingle, 486 U.S. at 404. However, "not every dispute concerning employment, or tangentially involving a provision of a [CBA], is preempted by § 301. . . ." See Allis-Chalmers, 471 U.S. at 211.

A court must engage in a two-part analysis in order to determine whether a state law claim is preempted by § 301. First, a court must analyze the "legal character" of the claim and whether it is truly independent of rights under the collective bargaining agreement. Livadas v. Bradshaw, 512 U.S. 107, 123-24 (1994); Foy v. Pratt & Whitney Group, 127 F.3d 229, 234 (2d Cir. 1997). If the right claimed by plaintiff exists solely as a result of the CBA, and not by virtue of state law, then the claim is preempted. Id.

However, even if the right exists independently of the CBA, the court must still consider whether it is nevertheless "'substantially dependent on analysis of a collective-bargaining agreement,'" and if dependent, the claim is preempted. Levy v. Verizon Info. Servs., Inc., 498 F. Supp. 2d 586, 596 (E.D.N.Y. 2007) (internal citations omitted); see also Allis-Chalmers, 471 U.S. at 213 (explaining that when "state . . . law purports to define the meaning of the contract relationship, that law is preempted"). In making this determination, courts must consider whether the claim can be resolved by "look[ing] to" the CBA as opposed to interpreting the CBA. See Livadas, 512 U.S. at 125. "If the latter, the claim is preempted; if the former, it is not." Burnside v. Kiewit Pacific Corp., 491 F.3d 1053, 1059-60 (9th Cir. 2007). "The bare fact that a [CBA] will be consulted in the course

-12-

of state-law litigation plainly does not require the claim to be extinguished," Livadas, 512 U.S. at 124, and "mere referral" to a CBA will not trigger preemption. Vera, 335 F.3d at 115 ("Nor would a state claim be preempted if its application required mere referral to the CBA for information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled") (internal quotation marks omitted)); see Wynn v. AC Rochester, 273 F.3d 153, 158 (2d Cir. 2001) (holding that "simple reference to the face of the CBA" does not require preemption of state fraud claim). Although FLSA and state law overtime claims that "are truly independent of a collective bargaining agreement are enforceable," § 301 will preclude such claims that are "inextricably intertwined" with the terms of a CBA. Dougherty, 902 F.2d at 203-04.

Contending that the dispute here does not involve interpretation of the CBA, plaintiff argues that Brookdale has engaged in the practice of paying wages at lower rates than it has certified under § 195.1 of the NYLL and that the "withholding of wages violates New York Labor Law § 193." See Pl.'s Mem. at 4. He argues that his "claim can be resolved by comparing the Section 195.1 Acknowledgments with Plaintiff's pay stubs." Id.

The shift differential at issue is set forth in Article XIV of the CBA which provides that:

> 1. Employees working on shifts whose straight time hours end after seven (7:00) p.m. or begin prior to six (6:00) a.m. shall receive the following differentials:
>     (a)  Licensed Practical Nurses - ...
>     (b)  All Other Employees - a shift differential of ten percent (10%) of salary, including specialty

-13-

differential.

2. Employees shall work in the shift, shifts or sift arrangements for which they were hired. The employer may change an Employee's shift only for good and sufficient reason, . . .

See DE 16-1 at 22-23.

Plaintiff's attempt to characterize his claims as simply involving unlawful "withholding" under the NYLL and the failure to pay the certified base wage and overtime is misleading. As he more clearly articulated and verified in his original complaint, the purported failure to pay the certified hourly wage stemmed from defendant's "practice of under-compensating Plaintiff and other similarly situated employees who work double shifts by paying them at a lower rate for both the First Shift when it was required to compensate them at the higher rate for both shifts." Compl. at ¶ 28. He does not claim that wages or overtime pay were not paid, but that some part of his compensation was not paid at an appropriate rate. Thus, plaintiff's claims do not arise from failure to pay wages at the determined rate, but from a dispute over the rate applicable for First Shift work under certain circumstances. This is a matter that is not resolved by looking to rates certified by Brookdale under the NYLL and computing wages owed. Rather, the issue whether the shift differential afforded under the CBA should be used in determining compensation for First Shift work when an employee works a consecutive Second Shift is clearly dependent on interpretation of rights conferred under the CBA. The plain language of the CBA does not address this issue.

Defendant contends that the CBA provides that employers should

-14-

be paid the wage rate applicable to each shift. See Def.'s Mem. at 11. Whether the hourly compensation paid is in compliance with the CBA and the extent to which wages were based on a CBA-defined wage structure that involves shift differentials and other potential adjustments, would clearly require interpretation of, and not just "mere referral" to the CBA. See Johnson, 861 F. Supp. 2d at 333; Levy, 498 F. Supp. 2d at 597-98; see also Caterpillar, 482 U.S. at 394; cf. Hoops v. Keyspan Energy, 822 F. Supp. 2d 301, 306 (E.D.N.Y. 2011) (requiring grievance under CBA because "before the Court can reach the issue of whether the Plaintiff is entitled to unpaid overtime compensation, the Court must first determine whether he was entitled to receive night shift differentials in his straight-time wage rate").

Thus, I respectfully recommend that the Court grant defendant's motion to dismiss plaintiff's claim under the NYLL because it is preempted by the LMRA. Id.

III. Motion to Compel Grievance and Arbitration and for a Stay

Defendant moves to compel "grievance and arbitration of plaintiff's claims, arguing that the LMRA requires exhaustion of remedies under a collective bargaining agreement and the terms of the CBA here require plaintiff to engage in a mandatory grievance, mediation, and arbitration procedure. See DE 17 at 2-3, 11.

As discussed above, § 301 "governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" See Caterpillar, 482 U.S. at 394 (quoting Electrical

-15-

Workers v. Hechler, 481 U.S. 851, 859 n.3 (1987)). In deference to the collective bargaining process, prior to bringing an action under Section 301, "the employee must exhaust grievance procedures provided by the relevant collective bargaining agreement." Dougherty, 902 F.2d at 203. Thus, "whether the [p]laintiff was required to exhaust the grievance procedures prior to bringing the instant lawsuit, and therefore whether he has stated a claim under Rule 12(b)(6), hinges on whether his claim is solely based on the statute, or whether it also requires interpretation of the CBA." Hoops, 794 F. Supp. at 379.

The reasons discussed above for finding that plaintiff's NYLL wage claims are preempted by the LMRA apply with equal force as to the applicability of the exhaustion requirements under the CBA; the issue whether the hourly rate differential under the CBA is applicable to First Shift work when a double shift is worked is dependent on analyzing the CBA. Thus, this Court next examines what procedures are applicable and required.

Articles XXXI, XXXIA, XXXIB and XXXII of the CBA set forth grievance, mediation and arbitration procedures for determining disputes arising under the CBA. DE 16-1 at 24-29. Section 1 of Article XXXI defines a grievance as a "dispute or complaint arising between the parties hereto under or out of this Agreement or the interpretation, application, performance, termination, or any alleged breach thereof," and requires that grievances "shall be processed and disposed of" in a three step process. Id. at 24. Articles XXXIA and XXXIB set forth mediation processes that a party

-16-

may request if a grievance is not resolved. Id. at 25-27. Article XXXII provides that a grievance "which has not been resolved .... may be referred for arbitration by the Employer or the Union to an arbitrator selected in accordance with the procedures of the American Arbitration Association." Id. at 28.

In moving to compel, defendant argues that the terms of the CBA require plaintiff to engage in a mandatory grievance, mediation, and arbitration procedure. See DE 17 at 2-3, 11. In so arguing, defendant elides the grievance, mediation, and arbitration provisions of the CBA by conflating and merging the requirement to grieve disputes into the procedures regarding arbitration. The plain language of the CBA makes clear that while the grievance procedure is compulsory, the mediation and arbitration procedures are not. Article XXXI of the CBA provides that any grievance "shall[6] be processed" as set forth in the section. Ct. doc. 16-1 at 26. Conversely, Article XXXII provides that any grievance "which has not been resolved [by the Grievance Procedure set forth in Article XXXI] may, within 30 working days after the completion of Step 3 of the grievance procedure, be referred for arbitration by the Employer or the Union..." Ct. doc. 16-1 at 28. The use of "may" suggests that referral is permissive, and is not triggered until completion of the grievance procedures.

---

[6] In statutory interpretation, it is axiomatic that the terms "shall" and "may" are to be understood in their usual sense, the former mandatory and the latter permissive. Weinstein v. Albright, 261 F.3d 127, 137 (2d Cir. 2001) ("both 'may' and 'shall,' [shall be subject to] the normal inference [] that each is used in its usual sense—the one act being permissive, the other mandatory").

Further, the mediation provision for disciplinary disputes and contract application for fact oriented issues states that issues not resolved after the third step of the grievance procedures set forth in Article XXXI, "shall be" submitted to mediation upon the request of either party, suggesting this type of mediation is mandatory, if referred. See ct. doc. 16-1 at 79-80 ("Article XXXIA"). However, mediation for "disputes involving contract interpretations which have League-wide ramifications," as set forth in Article XXXIB, that are "not resolved at the third step [of the Grievance Procedure set forth in Article XXXI], may be referred [] for resolution. . . ." Id. at 80-81 ("Article XXXIB"). Clearly, mediation and arbitration are procedures available under the CBA, but only after a dispute is not resolved in the three step grievance process.

With respect to compulsory grievance under the CBA, there is no indication that plaintiff exhausted any of the grievance procedures outlined in the CBA prior to filing this action. Although plaintiff "issued complaints to the Union" about underpayment, he claims "it is obvious that pursuing the Union to redress Defendant's practices of under-compensating employees who work double shifts is futile." Am. Comp. at ¶¶ 42, 43. In light of the procedures in Article XXXI, "the Plaintiff's right to receive night shift differentials is a contractual right under the CBA, and therefore must be submitted to the grievance procedures in the CBA." Hoops, 822 F. Supp. 2d at 306 (citations omitted).

Thus, I recommend that defendant's motion to compel submission

of plaintiff's claims to grievance procedures under the CBA be granted, but denied without prejudice as to mediation and arbitration, since the request is premature.

Last, defendant seeks a stay of this action pending exhaustion of procedures under the CBA.  Since the plaintiff's claim of entitlement to the higher pay differential to the First Shift when he works a double shift is a "threshold question that must be determined pursuant to the CBA dispute resolution procedures, . . . the FLSA claim is premature."  Hoops, 822 F. Supp. 2d at 307.  Therefore, there is no point in permitting this case to continue until the FLSA claim is ripe for adjudication.  The defendant requests only that the case be stayed pending determination of the appropriate pay rate pursuant to dispute resolution procedures.  While there is no reason not to grant the request, this Court recommends that the District Court consider dismissing the FLSA claims without prejudice, since they are not ripe for consideration.  See id.; Isaacs v. Cent. Parking Sys. of New York, Inc., 2012 WL 957494, at *1-6 (E.D.N.Y. Feb. 27, 2012) (dismissing claims "which arise, if at all, only under the CBAs" and are subject to arbitration without prejudice).

## CONCLUSION

For the foregoing reasons, I recommend that defendant's motion to dismiss plaintiff's NYLL claim be granted and that the motion to compel grievance be granted, but the motion to compel mediation and arbitration be denied.  Last, although no further proceedings should continue in this Court until exhaustion of dispute

resolution procedures under the CBA, I recommend that this Court, instead of granting defendant's motion to stay, dismiss plaintiff's remaining FLSA claim without prejudice.

This report and recommendation will be filed electronically on this date. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the Honorable Kiyo Matsumoto, by September 19, 2016. Failure to file objections within the specified time waives the right to appeal. See 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED.**

Dated:    Brooklyn, New York
          September 2, 2016

                                    /s/
                                    MARILYN D. GO
                                    UNITED STATES MAGISTRATE JUDGE